IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

BOTE, LLC,

               Plaintiff,

    vs.

IROCKER INC., a Delaware corporation;
IROCKERSUP, LLC, a Delaware corporation;
IROCKER PARENT LLC, a Delaware
corporation; and
AARON JOHN MAY, an individual,

               Defendants.

Case No: 3:25-cv-00376

DEMAND FOR A JURY TRIAL

---

## **COMPLAINT**

Plaintiff, BOTE, LLC ("Bote", phonetically: 'boat') alleges the following against AARON JOHN MAY, an individual ("Mr. May"), and the corporate entities IROCKER, INC; IROCKERSUP, LLC; and IROCKER PARENT LLC ("iRocker", unless otherwise specified).

### NATURE OF THE ACTION

1.    This civil action includes claims for patent infringement of two different United States patents, breach of certain post-termination restrictive covenants of an employment agreement, tortious interference with contractual

relationship, federal misappropriation of trade secrets (18 U.S.C. § 1836), and state misappropriation of trade secrets (Fla. Stat. § 688.001).

THE PARTIES

2.    BOTE, LLC is a limited liability company organized and existing under the laws of the State of Florida. Bote designs, develops, manufactures, assembles, sells, and distributes world class paddleboards, kayaks, floats, skiffs, inflatable furniture, and other products, as set forth on its website. *See* Bote, <https://www.boteboard.com> (last visited April 8, 2025). Bote and Mr. May entered into a contract on July 16, 2020, titled: "Confidentiality, Business Ideas Agreement, Non-Competition, and Non-Solicitation Agreement" (the "Employment Agreement"). Bote is the owner of U.S. Design Patent D1,004,726 ("the 'D726 Patent") and U.S. Utility Patent 12,137,806 ("the '806 Patent") (collectively, "Bote Patents"). Bote and iRocker are in direct competition with one another.

3.    AARON JOHN MAY was an employee and/or agent of Bote beginning on July 16, 2020; on that day, Mr. May and Bote entered into the Employment Agreement, which includes, among others, terms that expressly restrict Mr. May's

post-Bote employment for periods of two (2)[1,2] and ten (10)[3] years, depending on the provision. Mr. May's employment with Bote ended June 21, 2024 – less than ten months before the filing of this civil action. Immediately prior to his departure from Bote, Mr. May's title at Bote was "Product Director." As set forth below, Mr. May is currently in breach of the Employment Agreement. Mr. May is also an inventor of the United States Patent 12,137,806, titled "Inflatable Seating Apparatus", which Bote is asserting in this civil action as set forth more fully below.

4.    IROCKER, INC. is a Delaware Corporation with a principal place of business at 7643 Gate Pkwy., 104-1499, Jacksonville, Florida 32256. iRocker, Inc.'s principal is Steve Elder. Defendant iRocker, Inc. manufactures and offers for sale a

---

[1]    "Confidential Information Post-Employment. For a period of two (2) years following the end of Employee's employment with the Company, Employee will not directly or indirectly use or disclose any Confidential Information." Employment Agreement, ¶ 1.3.

[2]    "[Mr. May] covenants that [ ] for a period of two (2) years following the Termination Date [June 21, 2024], [he] will not [ ] directly or indirectly own, manage, finance, operate, joint, control, participate in, solicit, or derive any benefits whatsoever from, or be an officer, director, employee, partner, agent, consultant, or shareholder, of any person or business engaged in an activity that is in competition in any manner or form with the business of the Company in the United States, and [Mr. May] shall not render assistance or advice to any person, business, company, firm, or enterprise which is so engaged." Employment Agreement, ¶ 5.1.

[3]    "Trade Secrets Post-Employment. For a period of ten (10) years following the end of [Mr. May's] employment with the Company, Employee will not directly or indirectly use or disclose any Trade Secret [ ]." Employment Agreement, ¶ 1.2.

floating chair (the "iRocker Chair") that infringes on the Bote Patents, as well as paddle boards, kayaks, floating chairs, and hammocks.

5.    IROCKER SUP, LLC is a Delaware Corporation, incorporated under the name "iRocker LLC" in Delaware, that is registered to do business in Florida and upon information and belief, shares a principal place of business with Defendant iRocker, Inc. iRocker Sup, LLC's principal is Steve Elder.

6.    IROCKER PARENT LLC is the parent company of iRocker organized under the laws of Delaware. On information and belief, iRocker Parent LLC shares a principal place of business with Defendant iRocker, Inc. at 7643 Gate Pkwy., 104-1499, Jacksonville, Florida 32256. iRocker Parent LLC's principal is Steve Elder.

7.    If iRocker Inc. is not exclusively responsible for the asserted claims, then on information and belief, iRocker Sup, LLC and/or iRocker Parent LLC are involved.

<u>JURISDICTION AND VENUE</u>

8.    The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

9.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States, including its patent (35 U.S.C. § 271) and federal trade secret misappropriation laws (18 U.S.C. § 1836).

10.    This Court has supplemental jurisdiction over Bote's state law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to Bote's federal claims that they form part of the same case and controversy.

11.    This Court has personal jurisdiction over IROCKER, INC; IROCKERSUP, LLC; IROCKER PARENT LLC because those entities engage in substantial, continuous, and systematic business in Florida, its employees are principally located in and work in Florida, and their actions – including those directed at Bote – caused injury to Bote in Florida.

12.    This Court has personal jurisdiction over AARON JOHN MAY because Mr. May has availed himself of the forum, having intentionally established a connection with Florida, and benefiting from the laws and protections of Florida since at least July 16, 2020, when he entered into the Employment Agreement "governed by and construed in accordance with the substantive and procedural laws of Florida." (¶ 6.4). As set forth more fully below, within the last ten (10) months, Mr. May breached ¶ 5.1 of the Employment Agreement by, at least, "directly or indirectly" "participat[ing] in" a Florida-based business (iRocker) that is "in competition in any manner or form" with his former employer, a different Florida-based business (Bote). Mr. May also breached ¶ 5.1 of the Employment Agreement by "render[ing] assistance or advice" to a company principally based in Florida. Mr. May's violative work is for benefit of a Florida company (iRocker), and the

consequence of Mr. May's violative conduct is that products are effectively distributed from a Florida business entity (iRocker) to Florida residents. Still further, upon information and belief, Mr. May has travelled to Florida for the purpose of breaching the Employment Agreement; specifically, on information and belief, Mr. May travelled to the 2025 Palm Beach International Boat Show in Florida to, among other things, "render assistance or advice" to iRocker. At all times, Mr. May, a former employee of Bote, who signed an Employment Agreement with laws governed by Florida on July 16, 2020, knew that Bote is based in Florida, and knew that his conduct would be harmful to a Florida company (Bote).

13.    Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district. Venue is also proper before this Court because at least one Defendant is subject to this Court's personal jurisdiction with respect to this action.

<u>GENERAL ALLEGATIONS</u>

14.    Bote is the owner of all right, title, and interest in and to United States Design Patent D1,004,726, titled "Inflatable Chair." The 'D726 Patent claims the ornamental design for the inflatable chair. A true and correct copy of the 'D726 Patent is attached as **Exhibit A**. The 'D726 Patent is incorporated herein by reference. The application that became the 'D726 Patent was filed on December 17,

2021. After a full and fair examination by the USPTO, the 'D726 Patent issued on November 14, 2023.

15.    Bote is the owner of all right, title, and interest in and to United States Patent 12,137,806, titled "Inflatable Seating Apparatus." A true and correct copy of the '806 Patent is attached as **Exhibit B**. The '806 Patent is incorporated herein by reference. The application that became the '806 Patent was filed on May 19, 2022, and claims priority to U.S. App. No. 17/443,504, filed July 27, 2021, as a continuation-in-part. After a full and fair examination by the USPTO, the '806 Patent issued on November 12, 2024. Mr. May is a named co-inventor to the '806 Patent.

16.    Bote further owns pending patent applications claiming priority to the '806 Patent. For example, U.S. Application Ser. No. 18/650,679 is a continuation-in-part application from the '806 Patent, where examination and possible issuance are expected sometime in 2025; and U.S. Application Ser. No. 18/937,311 is a continuation from the '806 Patent, where examination and possible issuance are expected by 2026.

17.    Mr. May joined Bote on or about July 16, 2020. As a part of his employment, Mr. May was closely involved the design, development, and manufacture of many of Bote's products, including paddle boards, kayaks, floating chairs, and hammocks.

18.    Mr. May's role involved regular participation in, and exposure to, Bote's important confidential and non-public information, including but not limited to, details of future product development, commercial and sales strategies, and other information not generally known to the public.

19.    Mr. May regularly participated in, and was exposed to a host of confidential information and trade secrets. Among other information, Mr. May was privy to Bote's intellectual property strategy, including but not limited to the decisions that Bote made with respect to product design, Bote's patent and trademark strategies related to said product design, and the enforcement strategies of Bote. Mr. May, in the course of his job performance, frequently interfaced with Bote's in-house and outside counsel regarding the confidential and trade secret details of Bote's intellectual property strategy and product development.

20.    As a condition of his employment, Mr. May was required to sign the Employment Agreement, which includes certain covenants designed to protect Bote. A copy of the Employment Agreement is attached as **Exhibit C** and is incorporated by reference.

21.    iRocker is "engaged in any activity that is in competition in any manner or form with the business of [Bote] in the United States."

22.    On June 21, 2024, Bote terminated Mr. May. Mr. May thereafter signed a separation agreement on June 24, 2024, in which he agreed he would "continue to

abide by the terms of any and all written agreements with" Bote, and acknowledged that nothing in the separation agreement "is intended to, nor shall it, relieve you of any obligations that you have under any of those agreements."

23.    At some point subsequent to his termination but at least prior to the filing of this Complaint, Mr. May began "directly or indirectly" "participat[ing] in" competition at iRocker. Separately, at some point subsequent to his termination, but at least prior to the filing of this Complaint, Mr. May "render[ed] assistance or advice" to iRocker.

24.    While Mr. May's precise role at iRocker is not known at this time, on information and belief, Mr. May is involved in iRocker's product development in a role similar to his Product Director role at Bote.

25.    Mr. May has an active email account associated with iRocker's email domain: aaron.may@irocker.com.

26.    In March of 2025, iRocker attended the 2025 Palm Beach International Boat Show in Florida, where it had booth 326 in the Evernia Tent. During the event, iRocker posted a photograph (at right) to at least one of its social media accounts, in which Mr. May – dressed in iRocker-branded clothing – is wearing a microphone and showing and/or discussing iRocker products.



On information and belief, the image is no longer available to the public.

27.    The conduct above evidences that, at least, Mr. May is "directly or indirectly" "participat[ing] in" iRocker, and, separately, "render[ing] assistance" to iRocker, in violation of ¶ 5.1 of the Employment Agreement.

28.    Mr. May's unlawful competition, which on information and belief includes developing, at least in part, the infringing iRocker Chair, has harmed Bote and will continue to harm Bote if not enjoined.

29.    iRocker is currently accepting pre-orders for the iRocker Chair, which according to iRocker's website is "Expected to Ship 6.01.25."

30.    On information and belief, iRocker had knowledge of the terms and conditions of Mr. May's Employment Agreement and encouraged and/or induced

Mr. May to breach the terms of the Employment Agreement by retaining or otherwise working with Mr. May.

31.    The Employment Agreement requires Mr. May to disclose the agreement to "any person or entity that offers employment to" Mr. May during the term of the agreement. **Exhibit C**, ¶ 4.3.

32.    Moreover, Mr. May and iRocker have gone to considerable lengths to hide Mr. May's involvement with iRocker. For example, other than the now-inaccessible photograph referenced above, to the best of Bote's knowledge neither Mr. May nor iRocker has referenced the other on social media or other publicity materials, including iRocker's website. Mr. May has not updated his LinkedIn profile to identify that he is now working for or with iRocker.

33.    The clear inference of this secrecy is that Mr. May and iRocker are working together to conceal Mr. May's breach of his Employment Agreement, and iRocker's related tortious interference with Mr. May and Bote's Employment Agreement.

## COUNT I – INFRINGEMENT OF THE 'D726 PATENT
### (As to iRocker)

34.    Bote realleges and incorporates by reference the allegations in paragraphs 1-33 set forth above as if fully set forth herein.

35.    iRocker has made, used, imported, sold and/or offered for sale in the United States at least one product, the iRocker Chair, that infringes the 'D726 Patent.

The iRocker Chair, offered for sale and sold without license of Bote, is but a mere colorable imitation of the design claimed in the 'D726 Patent.

36.    iRocker's infringement is detailed in the preliminary claim chart attached hereto as **Exhibit D** and incorporated herein by reference. **Exhibit D** shows that the appearance of the iRocker Chair is substantially the same as that of the 'D726 Patented design in the eye of an ordinary observer giving such attention as a purchaser usually gives to the non-functional ornamental design of the product, with such resemblance such as to deceive an ordinary observer, inducing him/her to purchase the iRocker Chair, supposing it to be the claimed design of the 'D726 Patent.

37.    The iRocker Chair is currently being offered for sale in the United States on iRocker's website, <https://irockersup.com/pages/boat-show>, which provides pricing for the iRocker Chair, indicates that the iRocker Chair is "Expected to Ship 6.01.25," and provides a consumer the ability to "Pre-Order." The website also includes a photo showing an infringing use of the iRocker Chair. A copy of portions of the website showing the iRocker Chair being made, used, and offered for sale in the United States is attached as **Exhibit F**.

38.    iRocker's infringement of the 'D726 Patent is knowing and willful. On information and belief, iRocker hired Mr. May as an employee, contractor, and/or consultant who has direct knowledge of the 'D726 Patent with the intent of selling

competing products, including the iRocker Chair, that infringe the 'D726 Patent. At the very least, this Complaint provides sufficient knowledge to iRocker, after which any subsequent manufacture, use, importation, offer for sale or sale of the iRocker Chair will constitute willful infringement of the 'D726 Patent.

39.     If iRocker's infringing activities with respect to the iRocker Chair are not enjoined Bote will be irreparably harmed by, for example, being forced to compete with a product that infringes on its own patent. An early injunction is also appropriate in this case because the infringing products are "Expected to Ship 6.01.25."

40.     Bote has already been damaged as a result of iRocker's infringing activities and will continue to sustain damages in the future unless infringement of the 'D726 Patent is permanently enjoined by the Court. Such damages include lost profit, erosion of Bote's sales, and in any event no less than a reasonable royalty as set forth in 35 U.S.C. § 284.

## COUNT II – INFRINGEMENT OF THE '806 PATENT
### (As to iRocker)

41.     Bote realleges and incorporates by reference the allegations set forth above in paragraphs 1-33, as if fully set forth herein.

42.     iRocker has made, used, imported, sold and/or offered for sale at least one product, the iRocker Chair, that incorporates one or more of the inventions claimed in the '806 Patent, including in internal testing and usage.

43.    iRocker has infringed at least claim 1 of the '806 Patent with the iRocker Chair, as detailed in the preliminary claim chart attached hereto as **Exhibit E,** which is incorporated herein by reference.

44.    The iRocker Chair is currently being offered for sale in the United States on iRocker's website, https://irockersup.com/pages/boat-show, which provides pricing for the iRocker Chair, indicates that the iRocker Chair is "Expected to Ship 6.01.25," and provides a consumer the ability to "Pre-Order." The website also includes a photo showing an infringing use of the iRocker Chair. A copy of portions of the website showing the iRocker Chair being made, used, and offered for sale in the United States is attached as **Exhibit F.**

45.    iRocker's infringement of the '806 Patent is knowing and willful. On information and belief, iRocker hired Mr. May (who is a named inventor on, and therefor has direct knowledge of the '806 Patent) as an employee, contractor, and/or consultant with the intent of selling competing products, including the iRocker Chair, that infringe the '806 Patent. At the very least, this Complaint provides sufficient knowledge to iRocker, after which any subsequent manufacture, use, importation, offer for sale or sale of the iRocker Chair will constitute willful infringement of the '806 Patent.

46.    If iRocker's infringing activities with respect to the iRocker Chair are not enjoined, Bote will be irreparably harmed by, for example, being forced to

compete with a product that infringes on its own patent. An early injunction is also appropriate in this case because the infringing products are "Expected to Ship 6.01.25."

47.     Bote has already been damaged as a result of iRocker's infringing activities and will continue to sustain damages in the future unless infringement of the '806 Patent is permanently enjoined by the Court. Such damages include lost profit, erosion of Bote's sales, and in any event no less than a reasonable royalty as set forth in 35 U.S.C. § 284.

## COUNT III – BREACH OF CERTAIN POST-TERMINATION COVENANTS OF AN EMPLOYMENT AGREEMENT
### (As to Mr. May)

48.     Bote realleges and incorporates by reference the allegations set forth in paragraphs 1-33 above as if fully set forth herein.

49.     On or about July 16, 2020, Mr. May entered into the Employment Agreement with Bote.

50.     Pursuant to the Employment Agreement, Mr. May agreed that, during the period of his employment with Bote and for two (2) years after his termination, Mr. May would not compete in any way with Bote, including as an employee or consultant with a competing company. **Exhibit C,** § 5.1.

51.     The non-competition covenant is necessary to protect and maintain Bote's legitimate business interests, including but not limited to: (i) its trade secrets,

(ii) its valuable and confidential business information, (iii) its substantial relationships with specific prospective or existing clients, and (iv) its goodwill associated with the Bote name throughout Florida and the United States.

52.    The two-year restriction in the non-competition covenant prohibiting Mr. May from performing any work competitive with Bote is reasonable to protect Bote's legitimate business interests. Further, the geographic scope in the non-competition covenant is reasonable because it encompasses the territory in which Bote operates. Regardless, Mr. May's unlawful competition occurred well under a year after his termination and within the state of Florida.

53.    Mr. May breached ¶ 5.1 of the Employment Agreement by, at least, "directly or indirectly" "participat[ing] in" iRocker's business – a business that is "in competition in any manner or form" with Bote.

54.    Mr. May also breached ¶ 5.1 of the Employment Agreement by "render[ing] assistance or advice" to iRocker – a business that is "in competition in any manner or form" with Bote.

55.    Mr. May's breaches of the non-competition covenant have caused and continue to cause Bote irreparable harm in the form of, among other things, loss of customers and goodwill. Such harm will continue, and likely worsen, as Mr. May's work developing competing products for iRocker continues.

56.     Accordingly, Bote lacks an adequate remedy at law, and the interest of the public will be well-served by the entry of an injunction.

57.     As a result of Mr. May's actions, Bote is entitled to recover its damages, to the extent they can be ascertained.

58.     Pursuant to Fla. Stat. § 542.335(1)(k) and related controlling legal authority, Bote is entitled to recover an award of attorney's fees and costs for prosecuting this action.

59.     Pursuant to Fla. Stat. § 542.335(1)(j) and related controlling legal authority, Bote is entitled to an immediate injunction restraining Mr. May's breaches of the above referenced provision.

## COUNT IV – TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIP
### (As to iRocker)

60.     Bote realleges and incorporates by reference the allegations set forth in paragraphs 1-33 above as if fully set forth herein.

61.     Bote has had an established contractual relationship with Mr. May, and took reasonable and lawful steps to protect that relationship by requiring Mr. May to enter into the Employment Agreement.

62.     On information and belief, at all relevant times iRocker knew of the Employment Agreement and its terms and conditions, including the restrictive

covenant preventing Mr. May from competing with Bote for two years in the United States.

63.     Despite this knowledge, iRocker intentionally and knowingly interfered with Bote's contractual relationship with Mr. May by offering him employment developing products to compete with Bote, and thereby induced him to breach his Employment Agreement. iRocker continues to employ Mr. May and thereby continues to induce his breach of the Employment Agreement.

64.     As a direct and proximate cause of iRocker's actions, Bote has been harmed, and will continue to be harmed during the pendency of this action absent injunctive relief.

## COUNT V – FEDERAL MISAPPROPRIATION OF TRADE SECRETS
## (18 U.S.C. § 1836)
**(As to Mr. May and iRocker)**

65.     Bote realleges and incorporates by reference the allegations set forth in paragraphs 1-33 above as if fully set forth herein.

66.     iRocker and Mr. May misappropriated Bote's trade secrets, including but not limited to Bote's highly confidential intellectual property plans and strategies, which include the decisions that Bote made with respect to product design and Bote's patent and trademark strategies related to said product design.

67.     iRocker and Mr. May used and/or disclosed Bote's trade secrets despite knowing or having reason to know that the trade secrets were acquired by Mr. May

under circumstances giving rise to a duty to maintain the secrecy of the trade secret. Mr. May executed the Employment Agreement, which requires Mr. May to maintain the secrecy of Bote's confidential and trade secret information. **Exhibit C ¶¶** 1.1-1.3, 1.6, 4.1, *et seq*. iRocker knew or had reason to know of Mr. May's Employment Agreement and the restrictive covenants contained therein.

68.    Even if Mr. May has not yet disclosed Bote's trade secrets, given the nature of his role in high-level product development and intellectual property protection – including being a co-inventor on the '806 Patent – both at Bote and at iRocker, Mr. May will inevitably disclose Bote's trade secrets during the period in which he is unlawfully facilitating iRocker's competition with Bote.

69.    Bote uses reasonable means to maintain the secrecy of its trade secrets, including requiring employees to sign confidentiality agreements such as Mr. May's Employment Agreement. The Employment Agreement includes broad protections for Bote's confidential and trade secret information.

70.    At no point did Bote provide consent, written or otherwise, for Mr. May to disclose its trade secrets to iRocker.

71.    Bote's trade secrets derive independent economic value, both actual and potential, from not being generally known to, and not being readily ascertainable by proper means by third parties, including who can obtain economic value from their disclosure or use. iRocker, or any other competitor, can obtain economic value

from knowing the details of Bote's future product development as well as its intellectual property protection strategy, which would provide – and on information and belief, has already provided – valuable information about what products and brands Bote is in the process of developing. Even just knowing of Bote's pending patent applications provides a valuable head-start on developing competing products or designing around Bote's patents.

72.    Aaron May is a resident of Colorado, and his use of Bote's trade secrets in his work for iRocker in Florida involved interstate commerce. Moreover, iRockers' products, including those developed in part through the use of Bote's trade secrets, are sold via interstate commerce.

73.    Mr. May and iRocker willfully and maliciously acquired, used, and disclosed Bote's trade secrets. As a result, Bote has suffered actual damages in the form of the actual loss caused by the misappropriation, and the unjust enrichment caused by the misappropriation that is not taken into account in computing the actual loss.

## COUNT VI – STATE MISAPPROPRIATION OF TRADE SECRETS
### (FLA. STAT. § 688.001)
**(As to Mr. May and iRocker)**

74.    Bote realleges and incorporates by reference the allegations in paragraphs 1-33 set forth above as if fully set forth herein.

75.    iRocker and Mr. May misappropriated Bote's trade secrets, including but not limited to Bote's highly confidential intellectual property plans and strategies, which include the decisions that Bote made with respect to product design and Bote's patent and trademark strategies related to said product design.

76.    iRocker and Mr. May used and/or disclosed Bote's trade secrets despite knowing or having reason to know that the trade secrets were acquired by Mr. May under circumstances giving rise to a duty to maintain the secrecy of the trade secret. Mr. May executed the Employment Agreement, which requires Mr. May to maintain the secrecy of Bote's confidential and trade secret information. **Exhibit C** ¶¶ 1.1-1.3, 1.6, 4.1, *et seq.* iRocker knew or had reason to know of Mr. May's Employment Agreement.

77.    Even if Mr. May has not yet disclosed Bote's trade secrets, given the nature of his role in high-level product development and intellectual property protection – including being a co-inventor on the '806 Patent – both at Bote and at iRocker, Mr. May will inevitably disclose Bote's trade secrets during the period in which he is unlawfully facilitating iRocker's competition with Bote.

78.    Bote uses reasonable means to maintain the secrecy of its trade secrets, including requiring employees to sign confidentiality agreements such as Mr. May's Employment Agreement. The Employment Agreement includes broad protections for Bote's confidential and trade secret information.

79.    At no point did Bote provide consent, written or otherwise, for Mr. May to disclose its trade secrets to iRocker.

80.    Bote's trade secrets derive independent economic value, both actual and potential, from not being generally known to, and not being readily ascertainable by proper means by third parties, including who can obtain economic value from their disclosure or use. iRocker, or any other competitor, can obtain economic value from knowing the details of Bote's future product development as well as its intellectual property protection strategy, which would provide – and on information and belief, has already provided – valuable information about what products and brands Bote is in the process of developing. Even just knowing of Bote's pending patent applications provides a valuable head-start on developing competing products or designing around Bote's patents.

81.    Mr. May and iRocker willfully and maliciously acquired, used, and disclosed Bote's trade secrets. As a result, Bote has suffered actual damages in the form of the actual loss caused by the misappropriation, and the unjust enrichment caused by the misappropriation that is not taken into account in computing the actual loss.

## RELIEF REQUESTED

Bote respectfully requests the Court grant the following relief – in addition to all other available remedies at law and equity known and currently unknown – in light of the foregoing:

A.    A judgment that iRocker has infringed the 'D726 Patent;

B.    A judgment that iRocker has infringed the '806 Patent;

C.    A judgment that iRocker's infringement of the 'D726 Patent has been egregious and willful;

D.    A judgment that iRocker's infringement of the '806 Patent has been egregious and willful;

E.    An accounting for damages and judgment thereon under 35 U.S.C. § 284 resulting from iRocker's infringement of the 'D726 Patent including Bote's lost profits and/or Bote's damages arising from price erosion, but no less than a reasonable royalty, together with pre- and post-judgment interest and costs;

F.    An accounting for damages and judgment thereon under 35 U.S.C. § 284 resulting from iRocker's infringement of the '806 Patent including Bote's lost profits and/or Bote's damages arising from price erosion, but no less than a

reasonable royalty, together with pre- and post-judgment interest and costs;

G.    A judgment in favor of Bote and against iRocker in the amount of iRocker's total profit on sales of the iRocker Chair, as set forth in 35 U.S.C. § 289 and in light of the 'D726 Patent;

H.    Trebling of damages pursuant to 35 U.S.C. § 284 due to iRocker's egregious and willful infringement;

I.    Preliminary and permanent injunctions against iRocker and its officers, agents, employees, parent and subsidiary corporations, assigns, successors in interest and all those in active concert or participation with them or any of them, enjoining them from continued acts of infringement of the 'D726 Patent;

J.    Preliminary and permanent injunctions against iRocker and its officers, agents, employees, parent and subsidiary corporations, assigns, successors in interest and all those in active concert or participation with them or any of them, enjoining them from continued acts of infringement of the '806 Patent;

K.    A judgment holding this action to be an exceptional case and an award to Bote of its attorneys' fees and costs pursuant to 35 U.S.C. § 285;

L.    An injunction against Mr. May preventing him from competing, with iRocker or otherwise, with Bote for the pendency of the restrictive covenants in his Employment Agreement;

M.    An injunction against Mr. May and iRocker preventing them from further misappropriation of Bote's trade secrets under Federal and Florida law;

N.    An accounting for damages and judgment thereon resulting from Mr. May's unlawful competition and breach of the Agreement, as well as iRocker's tortious interference regarding the Agreement, including pre- and post-judgment interest;

O.    An accounting of damages and judgment thereon resulting from Mr. May's and iRocker's misappropriation of trade secrets including, without limitations: actual damages, compensatory damages, consequential damages, unjust enrichment, a reasonable royalty, exemplary damages in

an amount of twice the total of the actual loss, the unjust enrichment, and the reasonable royalty including lost profits, attorneys' fees, costs, and interest;

P.   For an award of attorney's fees pursuant to Fla. Stat. § 542.335(1)(k) and related controlling legal authority, for having to bring an action "seeking enforcement of [ ] a restrictive covenant [ ]";

Q.   For an award of reasonable attorney's fees pursuant to Fla. Stat. § 688.005 (2024) and related controlling legal authority, in light of the "willful and malicious misappropriation" of Bote's trade secrets;

R.   For an award of reasonable attorney's fees pursuant to 18 U.S.C. § 1836(B)(3)(D) and related controlling legal authority, given Bote's "trade secret[s] w[ere] willfully and maliciously misappropriated [ ]";

S.   Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Bote elects a trial by jury of any issues and claims in this action to which it is entitled.

26

Dated: April 8, 2025              BAKER & HOSTETLER LLP

Joyce Ackerbaum Cox
Joyce Ackerbaum Cox, Esq.
   Florida Bar No. 0090451
   jacox@bakerlaw.com
200 South Orange Avenue, Suite 2300
Orlando, Florida 32801
T: 407.649.4000

Douglas A. Grady, Esq. (*pro hac vice* forthcoming)
   Washington State Bar No. 36,100
   dgrady@bakerlaw.com
Paul J. Bruene, Esq. (*pro hac vice* forthcoming)
   Washington State Bar No. 52,727
   pbruene@bakerlaw.com
999 Third Avenue, Suite 3900
Seattle, Washington 98104
T: 206.332.1380

David A. Mancino, Esq. (*pro hac vice* forthcoming)
   Ohio Bar No. 0063466
   dmancino@bakerlaw.com
312 Walnut Street, Suite 3200
Cincinnati, Ohio 45202
T: 513.929.3400

Alyssa R. Kaufman, Esq. (*pro hac vice* forthcoming)
   California Bar No. 357724
   akaufman@bakerlaw.com
1900 Avenue of the Stars, Suite 2700
Los Angeles, California 90067
T: 310.820.8800