## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

BOTE, LLC,

     Plaintiff,

v.                                 Case No. 3:25-cv-376-MMH-MCR

IROCKER INC., et al.,

     Defendants.

_____

# O R D E R

**THIS CAUSE** is before the Court on Defendant Aaron May's Motion to Dismiss for Lack of Personal Jurisdiction or, Alternatively, to Compel Arbitration (Doc. 46; Motion), filed May 9, 2025. In the Motion, May moves to dismiss the claims against him for lack of personal jurisdiction under Rule 12(b)(2), Federal Rules of Civil Procedure (Rule(s)). <u>See</u> Motion at 3–21. In the alternative, if the Court concludes that the exercise of personal jurisdiction is proper, May moves to compel arbitration of the claims. <u>Id.</u> at 21–24. Plaintiff, Bote, LLC (Bote), timely filed a response in opposition to the Motion. <u>See</u> Bote LLC's Response to Defendant Aaron May's Motion to Dismiss for Lack of Personal Jurisdiction or, Alternatively, to Compel Arbitration (Doc. 63; Response), filed May 30, 2025. Accordingly, this matter is ripe for review.

## I.    Legal Standard

In considering a motion to dismiss for lack of personal jurisdiction under
Rule 12(b)(2), the "plaintiff seeking the exercise of personal jurisdiction over a
nonresident defendant bears the initial burden of alleging in the complaint
sufficient facts to make out a prima facie case of jurisdiction." See United Techs.
Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009). Where a defendant
"challenges jurisdiction by submitting affidavit evidence in support of its
position, 'the burden traditionally shifts back to the plaintiff to produce
evidence supporting jurisdiction.'" Id. (quoting Meier ex rel. Meier v. Sun Int'l
Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002)). In ruling on a motion to
dismiss for lack of personal jurisdiction, a district court has discretion to
conduct an evidentiary hearing. See Delong Equip. Co. v. Wash. Mills Abrasive
Co., 840 F.2d 843, 845 (11th Cir. 1988). However, where the court does not
conduct a hearing, "the plaintiff must present only a prima facie showing
of … personal jurisdiction." Id.

A plaintiff makes a prima facie showing by presenting evidence sufficient
to withstand a motion for directed verdict on the issue of personal jurisdiction.
See Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1988). Thus, "[t]he district
court must construe the allegations in the complaint as true, to the extent they
are uncontroverted by defendant's affidavits[,]" and "where the evidence

presented by the parties' affidavits … conflicts, the court must construe all reasonable inferences in favor of the non-movant plaintiff." Id. (citing Delong Equip. Co., 840 F.2d at 845); see also Mazer, 556 F.3d at 1274 (citing Polski Linie Oceaniczne v. Seasafe Transp. A/S, 795 F.2d 968, 972 (11th Cir. 1986)) (noting that, if the defendant rebuts the jurisdictional allegations in the plaintiff's complaint, "the plaintiff is required to substantiate [its] jurisdictional allegations … by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint"). This construction in favor of the plaintiff is particularly necessary where the jurisdictional questions are intertwined with the merits of a case. See Delong Equip. Co., 840 F.2d at 845.

Here, May contends that Bote "has failed to meet its initial burden to plead" a prima facie case of personal jurisdiction under the Florida long-arm statute. See Motion at 8. In support of the Motion, May provides a declaration in which he does not contradict the allegations in Bote's Complaint. See Exhibit A (Doc. 46-1; May Declaration); Complaint (Doc. 1), filed April 8, 2025. Bote does not provide any evidence in rebuttal. See generally Response. As such, in accordance with the prima facie framework outlined above, when summarizing the facts relevant to personal jurisdiction, the Court will take the allegations in the Complaint as true, consider the facts May sets forth in his declaration, and draw all reasonable inferences in Bote's favor. See Morris, 843 F.2d at 492.

## II.    Background

Bote is an LLC organized under Florida law. See Complaint ¶ 2. It "designs, develops, manufactures, assembles, sells, and distributes world class paddleboards, kayaks, floats, skiffs, inflatable furniture, and other products … ." Id. May, who lives in Colorado, began working remotely for Bote on July 16, 2020. Id. ¶¶ 3, 72; see also May Declaration ¶¶ 6, 7. He continued to work for Bote until June 21, 2024. See May Declaration ¶ 4. During his employment, "May was closely involved [in] the design, development, and manufacture of many of Bote's products, including paddle boards, kayaks, floating chairs, and hammocks." See Complaint ¶ 17. His role "involved regular participation in, and exposure to, Bote's important confidential and non-public information, including but not limited to, details of future product development, commercial and sales strategies, and other information not generally known to the public." Id. ¶ 18. And "May was privy to Bote's intellectual property strategy, including but not limited to the decisions that Bote made with respect to product design, Bote's patent and trademark strategies related to said product design, and the enforcement strategies of Bote." Id. ¶ 19.

When May began his employment with Bote, he signed an Employment Agreement. Id. ¶¶ 3, 20; see also Exhibit C to the Complaint (Doc. 1-1 at 24–28;

Employment Agreement).[1] According to the terms of the Employment Agreement, May agreed that for two years after the end of his employment with Bote, he would not "directly or indirectly own, manage, finance, operate, joint, control, participate in, solicit, or derive any benefits whatsoever from, or be an officer, director, employee, partner, agent, consultant, or shareholder, of any person or business engaged in an activity that is in competition in any manner or form with the business of [Bote] in the United States." See Complaint ¶ 3; id. at 3 n.2. He further agreed that he would not "render assistance or advice to any person, business, company, firm, or enterprise which is so engaged." Id. ¶ 3; id. at 3 n.2. And he agreed that, for ten years after the end of his employment, he would not "directly or indirectly use or disclose any Trade Secret[.]" Id. ¶ 3; id. at 3 n.3. According to Bote, its trade secrets are its "highly confidential intellectual property plans and strategies, which include the decisions that [it] made with respect to product design and [its] patent and trademark strategies related to said product design." Id. ¶¶ 66, 75.

Bote terminated May's employment on June 21, 2024. Id. ¶ 22. At some point later, but before Bote filed this action in April 2025, May entered into a

---

[1] The title of the Employment Agreement is "Confidentiality, Business Ideas Agreement, Non-Competition & Non-Solicitation Agreement." See Employment Agreement at 1. Because the parties in their briefing refer to this agreement as the Employment Agreement, to avoid confusion, the Court will do the same.

relationship with one of Bote's competitors, Defendant iRocker, Inc. (iRocker). Id. ¶¶ 4, 23–25.[2] iRocker's principal place of business is in Jacksonville, Florida. Id. ¶ 4. May was "involved in iRocker's product development in a role similar to his … role at Bote." Id. ¶ 24. iRocker attended the March 2025 Palm Beach International Boat Show in Florida. Id. ¶ 26. "During the event, iRocker posted a photograph … to at least one of its social media accounts, in which … May—dressed in iRocker-branded clothing—is wearing a microphone and showing and/or discussing iRocker products." Id. According to Bote, while working for iRocker, "May used and/or disclosed Bote's trade secrets[.]" Id. ¶¶ 67, 76; see also id. ¶¶ 66, 75 (alleging "May misappropriated Bote's trade secrets"). But May declares that any business activities in which he engaged relating to Florida "were undertaken in [his] capacity as an employee of Bote and, subsequently, iRocker." See May Declaration ¶ 7. He further states that he "never engaged in any business connected to Florida on [his] own behalf." Id.

Presumably while working for Bote, May invented an inflatable chair. See Complaint ¶ 3. Bote owns all rights in the chair, including patent rights. Id. ¶¶ 14–16. At iRocker, May "develop[ed], at least in part," a similar chair that

---

[2] iRocker is also a counterclaimant in this action. See Defendant iRocker Inc.'s Answer, Affirmative and Other Defenses, and Counterclaims to Plaintiff's Complaint (Doc. 50), filed May 12, 2025. The claims between iRocker and Bote are not relevant to resolving the Motion.

iRocker "manufacturers and offers for sale." Id. ¶¶ 4, 28, 29. According to Bote, iRocker's chair infringes on Bote's patents. Id. ¶ 4.

In the Complaint, Bote sues May as well as iRocker and its related entities. See generally id. With regard to May, Bote asserts three claims. In Count III, Bote brings a claim for breach of certain noncompete covenants of the Employment Agreement. Id. ¶¶ 48–59. In Count V, Bote brings a claim for misappropriation of trade secrets under 18 U.S.C. § 1836 (the Defend Trade Secrets Act, or DTSA). Id. ¶¶ 65–73. And in Count VI, Bote brings a state law claim for misappropriation of trade secrets under Florida Statutes section 688.001, et seq. (the Florida Uniform Trade Secrets Act, or FUTSA). Id. ¶¶ 74–81.

### III. Discussion

To determine whether the exercise of personal jurisdiction would be proper, courts conduct a two-part analysis. First, the Court must determine "whether the applicable statute potentially confers jurisdiction over the defendant." Republic of Pan. v. BCCI Holdings (Lux.) S.A., 119 F.3d 935, 942 (11th Cir. 1997). While federal statutes can confer jurisdiction by providing for service of process, in the absence of such a statute, the Court turns to the law of the state where the Court is located. See Delong Equip. Co., 840 F.2d at 847; Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 626–27 (11th Cir. 1996)

("When jurisdiction is based on a federal question arising under a statute that is silent regarding service of process, Rule 4(e) … directs us to look to the state long-arm statute in order to determine the existence of personal jurisdiction."); see also Walden v. Fiore, 571 U.S. 277, 283 (2014). Second, the Court must consider whether exercising personal jurisdiction over the defendant "would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution, which requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction over the defendant does not offend 'traditional notions of fair play and substantial justice.'" Mut. Serv. Ins. Co. v. Frit Indus., Inc., 358 F.3d 1312, 1319 (11th Cir. 2004) (quoting Sculptchair, Inc., 94 F.3d at 626). Here, May does not contend that the exercise of personal jurisdiction over him would offend due process. See generally Motion. Accordingly, the Court will discuss only the first issue, the application of the Florida long-arm statute, codified at Florida Statutes section 48.193.

The reach of Florida's long-arm statute is a question of Florida law. See Meier, 288 F.3d at 1271. As such, this Court must construe the statute as would the Florida Supreme Court, and, absent some indication that the Florida Supreme Court would hold otherwise, this Court is bound to adhere to decisions of Florida's intermediate courts. See id. Notably, "Florida's long-arm statute is to be strictly construed." Sculptchair, 94 F.3d at 627.

Florida Statutes section 48.193 confers two types of jurisdiction. See NW Aircraft Cap. Corp. v. Stewart, 842 So. 2d 190, 193–95 (Fla. 5th DCA 2003). First, section 48.193(1) lists enumerated acts which will confer specific personal jurisdiction over a defendant for suits arising from those acts. See Fla. Stat. § 48.193(1)(a). Second, section 48.193(2) "provides that Florida courts may exercise general personal jurisdiction" if the defendant engages in "substantial and not isolated activity" in Florida, whether or not the claims asserted actually involve the defendant's activities in Florida. See Carmouche v. Tamborlee Mgmt., Inc., 789 F.3d 1201, 1204 (11th Cir. 2015) (emphasis in original). In the Complaint, Bote fails to identify the statutory section on which it relies. But in the Response, Bote argues only that section 48.193(1) creates jurisdiction over May. See Response at 6–12. And, Bote fails to respond to May's argument that a Florida court cannot exercise general jurisdiction over him under section 48.193(2). See generally id. Thus, the Court limits its inquiry to whether a Florida court can exercise specific personal jurisdiction over May for the claims in this case.

Specific jurisdiction "refers to 'jurisdiction over causes of action arising from or related to a defendant's actions within the forum.'" PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V., 598 F.3d 802, 808 (11th Cir. 2010). Before addressing whether specific jurisdiction exists, in Florida courts "must

determine 'whether the allegations of the complaint state a cause of action.'" Id. (quoting Wendt v. Horowitz, 822 So. 2d 1252, 1260 (Fla. 2002), and citing 8100 R.R. Ave. Realty Trust v. R.W. Tansill Constr. Co., 638 So. 2d 149, 151 (Fla. 4th DCA 1994)). And, because specific jurisdiction is based upon the cause of action, a plaintiff must establish personal jurisdiction as to each claim. KVAR Energy Sav., Inc. v. Tri-State Energy Sol'ns, LLP, No. 6:08-cv-85-Orl-19KRS, 2009 WL 103645, at *3 (M.D. Fla. Jan. 15, 2009) (noting that a court must conduct a specific jurisdiction analysis for each claim separately);[3] see also Joseph v. Chanin, 869 So. 2d 738, 740–41 (Fla. 4th DCA 2004) (affirming the trial court's conclusion that the plaintiff stated a claim for conversion and thus the court had personal jurisdiction over that claim but not the plaintiff's other claims).[4]

---

[3] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects").

[4] The Court recognizes authority for the proposition that where a plaintiff's claims against a defendant "arise from the same jurisdiction generating event," a claim-by-claim showing that personal jurisdiction is proper may not be necessary. See SkyHop Techs., Inc. v. Narra, 58 F.4th 1211, 1231 (11th Cir. 2023) (quoting Cronin v. Wash. Nat'l Ins. Co., 980 F.2d 664, 671, (11th Cir. 1993)) (alteration adopted). The Court questions whether this proposition goes so far as to allow for jurisdiction over a count, which as pled, fails to state a claim for relief. See Wendt, 822 So. 2d at 1260 (requiring a court to determine whether "a cause of action is stated" before exercising jurisdiction under the long-arm statute; 8100 R.R. Ave. Realty Trust, 638 So. 2d at 151. Regardless, the Court need not resolve the issue because here, Bote's claims for trade secret misappropriation and breach of contract do not "arise from the same jurisdiction generating event." The contract claim arises from May's employment with Bote, see Complaint ¶¶ 48–59, but the trade secret claims arise from May's alleged disclosure of trade secrets, see id. ¶¶ 65–81. Accordingly, whether personal jurisdiction is proper must be evaluated separately for the contract and trade secrets claims.

In relevant part, section 48.193(1) provides:

A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of [a list of enumerated actions].

Fla. Stat. § 48.193(1)(a) (2025). Among others, the enumerated actions include "[o]perating, conducting, engaging in, or carrying on a business or business venture in [Florida]," see Fla. Stat. § 48.193(1)(a)(1), and "[c]ommitting a tortious act within [Florida]," see id. § 48.193(1)(a)(2). The term "arising from" as used in section 48.193(1) "is broad; it does not mean 'proximately caused by,' but only requires a 'direct affiliation,' 'nexus,' or 'substantial connection' to exist between the basis for the cause of action and the [enumerated action]." Kapila v. RJPT, Ltd., 357 So. 3d 241, 249 (Fla. 2d DCA 2023) (quoting Citicorp Ins. Brokers (Marine), Ltd. v. Charman, 635 So. 2d 79, 82 (Fla. 1st DCA 1994)) (nested quotations omitted).

Within certain limits, actions an individual takes as the representative of a corporation may not be considered when determining whether a claim against the individual falls within the reach of Florida's long-arm statute. See, e.g., Doe v. Thompson, 620 So. 2d 1004, 1006 (Fla. 1993); Sculptchair, 94 F.3d at 628. The Florida Supreme Court articulated the principle underlying this rule—commonly referred to as the "corporate shield doctrine"—for the first time

in the 1993 <u>Doe</u> decision. 620 So. 2d 1004. There, the Florida Supreme Court held that the president and CEO of a corporation who "did not <u>personally</u> do anything in Florida" was not subject to personal jurisdiction under section 48.193 even though the corporation he led conducted business in Florida. <u>Id.</u> at 1006.[5] The court explained that the corporate shield doctrine is premised on the principle that it "is unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer." <u>Id.</u> (quoting <u>Estabrook v. Wetmore</u>, 529 A.2d 956, 959 (N.H. 1987)).

The corporate shield doctrine is limited in two important respects. First, the corporate shield doctrine does not apply to torts committed while physically present in Florida. <u>See Kitroser v. Hurt</u>, 85 So. 3d 1084, 1088–90 (Fla. 2012). And second, the corporate shield doctrine does not bar consideration of fraud and intentional torts committed outside of Florida but directed into Florida. <u>See LaFreniere v. Craig-Myers</u>, 264 So. 3d 232, 239 (Fla. 1st DCA 2018) (explaining that, for a court to consider intentional torts despite the corporate shield doctrine, "the conduct alleged must consist of intentional and tortious acts 'expressly aimed at' Florida, with knowledge by the defendant that it 'would

---

[5] In <u>Doe</u>, the Florida Supreme Court did not distinguish between the different subsections of the long-arm statute. <u>See generally Doe</u>, 620 So. 2d 1004.

have a potentially devastating impact'" on the plaintiff (citation omitted)). Guided by these principles, the Court considers whether either Florida Statutes section 48.193(1)(a)(1) or (1)(a)(2) authorizes the exercise of personal jurisdiction over May.[6]

### A.    Section 48.193(1)(a)(1)

### 1.    The Corporate Shield Doctrine

May argues that the corporate shield doctrine bars the exercise of personal jurisdiction over him in Florida under Florida Statutes section 48.193(1)(a)(1). See Motion at 9–11. According to May, all of his activities in Florida were undertaken in his capacity as an employee of iRocker and "the actions of a corporate employee in a representative capacity do not form the basis for jurisdiction over the corporate employee in their individual capacity." See id. at 9 (quoting Harrison v. NC3 Sys., Inc., 395 So. 3d 657, 663 (Fla. 6th DCA 2024)).

---

[6] In the Motion, May also argues that the Court lacks personal jurisdiction over him under section 48.193(1)(a)(7), which provides jurisdiction for causes of action arising from the defendant "[b]reaching a contract in this state by failing to perform acts required by the contract to be performed in this state." See Motion at 15–18. In the Response, Bote does not contend that jurisdiction is proper under subsection (1)(a)(7). See generally Response. Thus, the Court will not consider this subsection when evaluating whether it can properly exercise personal jurisdiction over May. In any event, there is no indication that May's alleged breach of the Employment Agreement involved "failing to perform acts required by the contract to be performed in [Florida]." See generally Complaint; Employment Agreement.

Courts have long applied the corporate shield doctrine to subsection (1)(a)(1) of the Florida long-arm statute. See, e.g., Excel Handbag Co. v. Edison Bros. Stores, Inc., 428 So. 2d 348, 350 (Fla. 3d DCA 1983) ("While a corporation itself may be subject to jurisdiction when it transacts business through its agents operating in the forum state, unless those agents transact business on their own account in the state, as opposed to engaging in business as representatives of the corporation, they are not engaged in business so as to be individually subject to the state's long-arm statute."); Sculptchair, 94 F.3d at 628 (same) (quoting Excel Handbag, 428 So.2d at 350); see also A.B.L. Realty Corp. v. Cohl, 384 So. 2d 1351, 1355–56 (Fla. 4th DCA 1980) (holding that an individual's "acti[ons] in their corporate capacit[y]" should not be considered when evaluating whether section 48.181, a substitute service provision with identical language to subsection (1)(a)(1), is met).[7] Nevertheless, Bote contends that under Kitroser, 85 So. 3d 1084, the corporate shield doctrine does not apply when the defendant acted while physically present in Florida. See Response at 5–10; see also Kitroser, 85 So. 3d at 1088 ("[A]cts performed by a person exclusively in his corporate capacity not in Florida but in a foreign state may

---

[7] The Eleventh Circuit has stated that "decisions concerning what constituted doing business under Section 48.181 apply to Section 48.193(1)(a)." Oriental Imps. and Exps., Inc. v. Maduro & Curiel's Bank, N.V., 701 F.2d 889, 893 (11th Cir. 1983). As such, the Court finds A.B.L. Realty persuasive here.

- 14 -

not form the predicate for the exercise of personal jurisdiction over the employee in the forum state."). This argument is unavailing.

In <u>Kitroser</u>, the Florida Supreme Court evaluated whether personal jurisdiction was proper under section 48.193(1)(a)(2) (extending jurisdiction to those who "commit[] a tortious act within [Florida]"). <u>Id.</u> at 1089.[8] In holding that the corporate shield doctrine did not protect employees who commit torts in their course of employment while in Florida, the court explained that "[its] precedent and the statutory language of section 48.193 have never suggested that an actor who is <u>present in Florida</u> and commits tortious acts in-state is excepted from personal jurisdiction because he or she works on behalf of a corporation." <u>Id.</u> at 1089.

But <u>Kitroser</u>'s physical-presence distinction has no bearing on subsection (1)(a)(1) of the Florida long-arm statute. As noted above, in <u>Kitroser</u> the court evaluated jurisdiction under subsection (1)(a)(2), not subsection (1)(a)(1). <u>See generally</u> <u>Kitroser</u>, 85 So. 3d 1084. Thus, it appears that <u>Kitroser</u> leaves intact the rule stated in <u>Excel Handbag</u> and <u>Sculptchair</u> as to subsection (1)(a)(1). Moreover, even if the Court were inclined to read <u>Kitroser</u> more broadly, Florida's intermediate appellate courts—which bind this Court—have almost

---

[8] When <u>Kitroser</u> was decided, subsection (1)(a)(2) was codified at subsection (1)(b). <u>See generally</u> <u>Kitroser</u>, 85 So. 3d 1084; Fla. Stat. § 48.193(1)(b) (2012).

universally concluded after <u>Kitroser</u> that the rule stated in <u>Excel Handbag</u> and
<u>Sculptchair</u> still applies to subsection (1)(a)(1). <u>See</u> <u>Harrison</u>, 395 So. 3d
657; <u>LaFreniere</u>, 264 So. 3d 232; <u>Affenita v. Storfer</u>, 417 So. 3d 305, 310–11 (Fla.
4th DCA 2025); <u>but see</u> <u>Ware v. Citrix Sys., Inc.</u>, 258 So. 3d 478, 482–84 (Fla.
4th DCA 2018) (remanding for the trial court to conduct an evidentiary hearing
as to "the degree to which [seven employees] were engaged with business in
Florida via [their employer]" so the court could determine whether the
employees came within the reach of subsection (1)(a)(1)). For example, in
<u>Harrison</u>, Florida's Sixth District Court of Appeal considered a challenge to
personal jurisdiction under sections 48.193(1)(a)(1) and 48.193(1)(a)(2). <u>See</u>
<u>Harrison</u>, 395 So. 3d at 662. The court stated:

> [N]either [the defendant's proffered] affidavit nor any of the
> evidence adduced at the hearing showed that [the defendant] was
> doing business in Florida in his personal capacity as opposed to his
> corporate capacity. Nor was there any evidence that [he] committed
> any of the tortious acts alleged in the Amended Complaint while he
> was physically present in the State of Florida. Therefore, unless
> [the plaintiff] can show that [the defendant] engaged in intentional
> tortious conduct "expressly aimed at" Florida, the corporate shield
> doctrine bars the exercise of personal jurisdiction in this case.

<u>Id.</u> at 664 (quoting <u>LaFreniere</u>, 395 So. 3d at 238). Similarly, in <u>LaFreniere</u>, the
First District Court of Appeal concluded that the corporate shield doctrine
barred the exercise of personal jurisdiction over a nonresident corporate officer,
stating:

> all pertinent paragraphs in [the plaintiff's] amended complaint alleged that [the defendant] acted "in the course and scope of her employment and as [a] corporate officer." Thus, the corporate shield doctrine bars the exercise of personal jurisdiction, unless facts alleged in the amended complaint show that [the defendant] committed a tort in Florida.

LaFreniere, 264 So. 3d at 238 (quoting Kitroser, 85 So. 3d at 1090); see also id. at 242 (holding that the defendant's activities did not meet the requirements of subsection (1)(a)(1) because she did not have "a personal business office or personal business venture" in Florida).

The Court follows the majority rule, finding Harrison and LaFreniere directly applicable. Like the defendant in LaFreniere, May acted at all times in the course and scope of his employment as a corporate employee. See May Declaration ¶ 7; LaFreniere, 264 So. 3d at 238. As such, the corporate shield doctrine bars consideration of May's activities when determining whether subsection (1)(a)(1) of the long-arm statute is satisfied. See Harrison, 395 So. 3d at 664. Because Bote does not dispute that May "ha[s] never engaged in any business connected to Florida on [his] own behalf," see id.; see generally Response, the Court cannot exercise personal jurisdiction over him under section 48.193(1)(a)(1).

## 2.    Whether May's Conduct Would Satisfy Florida Statutes Section 48.193(1)(a)(1)

Even if the Court were to consider May's actions as a representative of iRocker, the exercise of personal jurisdiction under Florida Statutes section 48.193(1)(a)(1) would still be improper because these actions do not constitute "[o]perating, conducting, engaging in, or carrying on a business or business venture in [Florida]."

"The question of whether a nonresident is 'doing business' or 'engaged in a business venture' in Florida depends on the unique facts presented in each case." Kapila, 357 So. 3d at 246. Notably, "there is a significant difference between a 'business' and a 'business venture.'" A.B.L. Realty, 384 So. 2d at 1354 (evaluating section 48.181). "The latter may be established by showing a lesser involvement than would be required to prove the former." Id. However, "[u]nder either standard, the defendant's activities 'must be considered collectively and show a general course of business activity in the state for pecuniary benefit.'" Kapila, 357 So. 3d at 247 (quoting April Indus., Inc. v. Levy, 411 So. 2d 303, 305 (Fla. 3d DCA 1982)); see also Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A., 421 F.3d 1162, 1167 (11th Cir. 2005). "That requirement can be satisfied either by (1) 'doing a series of similar acts for the purpose of thereby realizing pecuniary benefit or' (2) 'doing a single act for such purpose

with the intention of thereby initiating a series of such acts.'" See RMS Titanic, Inc. v. Kingsmen Creatives, Ltd., 579 F. App'x 779, 783–84 (11th Cir. 2014) (quoting Wm. E. Strasser Constr. Corp. v. Linn, 97 So. 2d 458, 460 (Fla. 1957)) (nested quotations omitted).[9] "Factors relevant, but not dispositive, to this analysis include the presence and operation of an office in Florida, the possession and maintenance of a license to do business in Florida, the number of Florida clients served, and the percentage of overall revenue gleaned from Florida clients." Horizon Aggressive Growth, 421 F.3d at 1167 (citations omitted).

Solicitation of prospective clients in Florida can satisfy subsection (1)(a)(1) of the Florida long-arm statute, but courts must evaluate "the quantity as well as the quality of the solicitation." Level 8 Mgmt., Inc. v. Wildflower Legacy and Wealth Plan., LLC, 395 So. 3d 590, 598–99 (Fla. 2d DCA 2024) (quoting Reader's Digest Ass'n v. State, 251 So. 2d 552, 555 (Fla. 1st DCA 1971)); see also id. at 599 (holding that "solicitation amount[ing] to less than a handful of potential clients, a meeting with a potential referral source, a Zoom call, and a dinner and football game" did not satisfy subsection (1)(a)(1)

---

[9] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

considering that "[n]o clients were cultivated from these efforts[] and there was no economic benefit derived from th[e] solicitation"). Importantly, "the fact that [a foreign defendant] render[s] … professional services for the benefit of a Florida citizen [is] insufficient by itself to trigger the provisions of the Florida Long-Arm statute." Horizon Aggressive Growth, 421 F.3d at 1167.

The undisputed facts as to May's conduct would not support personal jurisdiction under subsection (1)(a)(1) even if the corporate shield doctrine did not apply. Almost all of May's conduct occurred outside the state of Florida, and even though this was "for the benefit of" iRocker, a Florida citizen, this out-of-state conduct is not enough to trigger subsection (1)(a)(1). See Horizon Aggressive Growth, 421 F.3d at 1167; see also id. ("[C]onducting business from a [foreign] office as if in Florida is insufficient under the plain text of the statute."). As for May's conduct within Florida, Bote alleges only that "iRocker attended the 2025 Palm Beach International Boat Show" and that "[d]uring the event, iRocker posted a photograph … in which … May—dressed in iRocker-branded clothing—is wearing a microphone and showing and/or discussing iRocker products." See Complaint ¶ 26. This is mere "isolated activity" even less significant than the activities the court found insufficient in Level 8 Management. See Level 8 Mgmt., 395 So. 3d at 599–601. May does not "operat[e] … an office in Florida" or "possess[] and maint[ain] … a license to do

business in Florida." See generally Complaint; May Declaration; see also Horizon Aggressive Growth, 421 F.3d at 1167. And, Bote does not allege that May earned revenue from Florida clients, at the boat show or otherwise. See generally Complaint. In sum, Bote has failed to establish that May's activities, considered as a whole, amount to operating a business or engaging in a business venture in Florida. Section 48.193(1)(a)(1) does not provide a basis for the exercise of personal jurisdiction over May.[10]

### B. Subsection (1)(a)(2)

May also contends that the Court lacks jurisdiction over him under Florida Statutes section 48.193(1)(a)(2) because Bote fails to state a trade secret misappropriation claim against him. See Motion at 11–15. In Response, Bote argues that it states claims against May for misappropriation of trade secrets in Count V (under the DTSA), see Complaint ¶¶ 65–73, and in Count VI (under the FUTSA), see id. ¶¶ 74–81. See Response at 10–12. Upon review, the Court

---

[10] Notably, Bote also fails to explain why its claims for trade secret misappropriation "arise from" May's business activities in Florida. See generally Response. Indeed, Bote does not explain any connection between May's purported disclosure of trade secrets and his participation in a Florida trade show. See generally id.; see also Complaint. Thus, even if the Court were to conclude that May's activities in Florida satisfied subsection (1)(a)(1) of the long-arm statute, the Court would still lack personal jurisdiction under that subsection as to the trade secret claims.

concludes that the Court lacks personal jurisdiction over May under subsection

(1)(a)(2).[11]

As discussed above, when evaluating whether a defendant's conduct

satisfies subsection (1)(a)(2) of the Florida long-arm statute, a court must first

determine if the plaintiff states a tort claim. See Wendt, 822 So. 2d at 1260

("[W]here the threshold question of personal jurisdiction turns on whether a

tort is committed in Florida, the court necessarily must review the allegations

---

[11] In the Response, Bote, in addition to asserting that it adequately alleges a trade secrets misappropriation claim, alternatively requests leave to amend its Complaint in the event the Court grants the Motion on this basis. See Response at 12. As an initial matter, the Court notes that a request for affirmative relief, such as a request for leave to amend a pleading, is not properly made when simply included in a response to a motion. See Fed. R. Civ. P. 7(b); see also Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty, 48 F.4th 1222, 1236 (11th Cir. 2022) ("[W]here a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly." (quoting Newton v. Duke Energy Fla., LLC, 895 F.3d 1270, 1277 (11th Cir. 2018)); Rosenberg v. Gould, 554 F.3d 962, 965 (11th Cir. 2009).

Moreover, even if it were proper to include this request in the response, the request is otherwise due to be denied for failure to comply with Rules 3.01(a) and 3.01(g) of the Local Rules of the United States District Court for the Middle District of Florida (Local Rule(s)). Local Rule 3.01(a) requires a memorandum of legal authority in support of a request from the Court. See Local Rule 3.01(a). Local Rule 3.01(g) requires certification that the moving party has conferred with opposing counsel in a good faith effort to resolve the issue raised by the motion and advising the Court whether opposing counsel agrees to the relief requested. See Local Rule 3.01(g). In addition to these deficiencies under the Local Rules, the request in the Response also fails to satisfy the requirement that "[a] motion for leave to amend should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment." Long v. Satz, 181 F.3d 1275, 1279 (11th Cir. 1999); see also McGinley v. Fla. Dep't of Highway Safety and Motor Vehicles, 438 F. App'x 754, 757 (11th Cir. 2011) (affirming denial of leave to amend where plaintiff did not set forth the substance of the proposed amendment); U.S. ex rel. Atkins v. McInteer, 470 F.3d 1350, 1361–62 (11th Cir. 2006) (same). Thus, the Court will not entertain Bote's request for relief included in the Response. Bote is advised that, if it wishes to pursue such relief, it is required to file an appropriate motion in accordance with the Rules and the Local Rules.

of the complaint to determine if a cause of action is stated.").[12] And in this case, because May acted in a corporate capacity, Bote must show that the corporate shield doctrine does not apply. Bote does not contend that May committed a tort while physically present in Florida, see generally Complaint; Response, so the first limitation on the corporate shield doctrine is not relevant, see Kitroser, 85 So. 3d at 1088. As to the second limitation, Bote must allege that May committed an intentional tort directed at Florida. See LaFreniere, 264 So. 3d at 239. The Court will assume, as the parties seem to, that under the corporate shield doctrine, an intentional tort is directed at Florida when communications sent into Florida injure a Florida citizen. Thus, the corporate shield doctrine would not apply if May committed an intentional tort by sending communications into Florida that injured Bote. The Court turns then to the question of whether Bote states a plausible claim for that alleged intentional tort. Id. (explaining that the "threshold question raised" when a plaintiff seeks to invoke the intentional tort exception to the corporate shield doctrine is

---

[12] Notably, "a defendant's physical presence" is not necessary to commit a tortious act in Florida. Wendt, 822 So. 2d at 1260. Rather, a nonresident defendant can commit a tortious act in Florida under section 48.193(1)(a)(2) by way of telephonic, electronic, or written communications into Florida, so long as the tort alleged arises from such communications. See Internet Sols. Corp. v. Marshall, 39 So. 3d 1201, 1208 (Fla. 2010); Wendt, 822 So.2d at 1253. In addition, "[a]ccording to precedent binding [in the Eleventh Circuit,] subsection (1)[(a)(2)] extends long-arm jurisdiction over defendants who commit a tort that results in injury in Florida." Posner v. Essex Ins. Co., 178 F.3d 1209, 1219 (11th Cir. 1999); Licciardello v. Lovelady, 544 F.3d 1280, 1283 (11th Cir. 2008); Est. of Scutieri v. Chambers, 386 F. App'x 951, 955 (11th Cir. 2010).

- 23 -

"whether the complaint sufficiently states a cause of action for an intentional
tort").

"[I]n Florida, trade secret misappropriation is an intentional tort."
Compulife Software, Inc. v. Newman, 111 F.4th 1147, 1163 (11th Cir. 2024)
(Compulife II). As such, the Court must determine whether Bote has pled a
claim for misappropriation of trade secrets against May that is facially
plausible. See PVC Windoors, 598 F.3d at 808. In determining whether Bote
has stated a cause of action upon which relief can be granted, the Court must
accept the factual allegations set forth in the Complaint as true. See Ashcroft
v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506,
508 n. 1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d
1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be
drawn in favor of Bote. See Omar ex. rel. Cannon v. Lindsey, 334 F.3d 1246,
1247 (11th Cir. 2003) (per curiam). Nonetheless, Bote must still meet some
minimal pleading requirements. Jackson v. BellSouth Telecomms., 372 F.3d
1250, 1262 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts
are not necessary[,]" the Complaint should "give the defendant fair notice of
what the ... claim is and the grounds upon which it rests." Erickson v. Pardus,
551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atl. Corp. v. Twombly, 550
U.S. 544, 555 (2007)). Further, Bote must allege "enough facts to state a claim

that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). Bote's "obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." See Iqbal, 556 U.S. at 678–79. Thus, the Court must determine whether the Complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 570).

In considering the sufficiency of Bote's trade secrets misappropriation claims, the Court observes that, under most circumstances, "the [DTSA] is so much like the [FUTSA] that an analysis of a Florida claim amounts to an analysis of a federal one." Compulife II, 111 F.4th at 1160 n.1; see also

Compulife Software Inc. v. Newman, 959 F.3d 1288, 1311 n.13 (11th Cir. 2020)

(Compulife I) (noting that the DTSA and FUTSA are similar in most respects).

As such, the Court will evaluate Bote's trade secrets claims primarily under the

FUTSA, referencing the DTSA when helpful.

To establish a "claim under the [FUTSA], [a plaintiff] 'must demonstrate

that (1) it possessed a trade secret and (2) the secret was misappropriated.'"

Compulife I, 959 F.3d at 1310 (quoting Yellowfin Yachts, Inc. v. Barker

Boatworks, LLC, 898 F.3d 1279, 1297 (11th Cir. 2018)). May does not argue

that Bote fails to allege it possessed a trade secret, see Motion at 11–15; see also

Complaint ¶¶ 66, 75 (purporting to identify Bote's trade secrets), so for the

purposes of resolving the Motion, the Court will assume that Bote alleges it

possessed a trade secret and will evaluate whether it adequately alleges

misappropriation.

"One party can misappropriate another's trade secret by either

acquisition, disclosure, or use." Compulife I, 959 F.3d at 1311 (citing Fla. Stat.

§ 688.002(2)). Because Bote alleges that May lawfully obtained Bote's trade

secrets in the course of his employment, see Complaint ¶¶ 17–19,

misappropriation by acquisition is not relevant here. Misappropriation by

disclosure or use occurs when a person "discloses" or "uses" another's trade

secret "without express or implied consent" and the person:

> 1. Used improper means to acquire knowledge of the trade secret; or
>
> 2. At the time of disclosure or use, knew or had reason to know that her or his knowledge of the trade secret was:
>
>> a. Derived from or through a person who had utilized improper means to acquire it;
>>
>> b. Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
>>
>> c. Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
>
> 3. Before a material change of her or his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

See Fla. Stat. § 688.002(2)(b).

A plaintiff may not rely on a theory of "inevitable disclosure" to prevail on a trade secrets misappropriation claim. See Patient Depot, LLC v. Acadia Enters., Inc., 360 So. 3d 399, 411 (Fla. 4th DCA 2023) (Forst, J., concurring) ("[N]o Florida cases have adopted the inevitable disclosure doctrine, nor have our state courts even acknowledged it."). Thus, a plaintiff will not succeed on a claim for trade secret misappropriation by establishing only that a defendant possessing the trade secret left the plaintiff's employ to work for a competitor, even in a highly similar role. See, e.g., Del Monte Fresh Produce Co. v. Dole Food Co., 148 F. Supp. 2d 1326, 1335–39 (S.D. Fla. 2001) (holding that under the FUTSA, a plaintiff was not entitled to injunctive relief when it established that a former employee who possessed trade secrets began working for a competitor in a similar role); AWP, Inc. v. Henry, No. 1:20-cv-1625-SDG, 2020

WL 6876299, at *4 (N.D. Ga. Oct. 28, 2020) (holding that under Georgia law and the DTSA, the plaintiff did not state a claim by alleging that the defendant company hired two former employees of the plaintiff who possessed the plaintiff's trade secrets); Lucasys Inc. v. PowerPlan, Inc., No. 1:20-cv-2987-AT, 2022 WL 17371073, at *3–5 (N.D. Ga. May 10, 2022) (holding that under Georgia law and the DTSA, the counterclaim-plaintiff did not state a claim against a competing company by alleging that former employees who possessed trade secrets founded the company); Kinship Partners, Inc. v. Embark Veterinary, Inc., No. 3:21-cv-1631-HZ, 2022 WL 72123, at *6–7 (D. Or. Jan. 3, 2022) (holding that under Oregon law and the DTSA, a plaintiff was not entitled to injunctive relief when it established that a former employee who possessed trade secrets began working for a competitor); IDEXX Lab'ys, Inc. v. Bilbrough, No. 2:22-cv-56-JDL, 2022 WL 3042966, at *3–6 (D. Me. Aug. 2, 2022) (holding that under the DTSA, injunctive relief was not available to a plaintiff that alleged a former employee who possessed trade secrets began working for a competitor in a nearly identical role), report and recommendation adopted, 2022 WL 4940200 (D. Me. Oct. 4, 2022). Notably, the DTSA explicitly prohibits a court from enjoining an employee from entering an employment relationship and requires that "conditions placed on such employment shall be based on

evidence of threatened misappropriation and not merely on the information the person knows." <u>See</u> 18 U.S.C. § 1836(b)(3)(A)(i).[13]

To evaluate the sufficiency of Bote's claims for trade secret misappropriation, the Court first identifies—and disregards—the allegations that are no more than a "formulaic recitation of the elements" of Bote's claims. <u>See</u> <u>Twombly</u>, 550 U.S. at 555. These include Bote's allegations that while working for iRocker, "May used and/or disclosed Bote's trade secrets," <u>see</u> Complaint ¶¶ 67, 76, and that "May misappropriated Bote's trade secrets," <u>see</u> <u>id.</u> ¶¶ 66, 75. In terms of factual content that suggests May misappropriated Bote's trade secrets, Bote alleges only that (a) May worked for iRocker, a close competitor of Bote's, in a substantially similar role, <u>see</u> Complaint ¶¶ 23, 24; and (b) May helped iRocker develop a floating chair similar to a patented Bote chair that May invented, <u>see</u> <u>id.</u> ¶ 28. But the mere fact that May worked for iRocker does little to support Bote's claim that May misappropriated Bote's trade secrets. <u>See</u> <u>Del Monte</u>, 148 F. Supp. 2d at 1335–39. As to the chair, Bote does not allege any facts that suggest iRocker would have been unable to develop, manufacture, or market its version of the chair without the use of

_____

[13] The Court notes that Bote does not seek to enjoin May from working for iRocker under the DTSA. <u>See</u> Complaint at 23–26. Nevertheless, the Court finds the DTSA's prohibition on injunctions premised solely on an individual's knowledge instructive as to whether a plaintiff can state a claim under the DTSA on an inevitable disclosure theory.

Bote's trade secrets. <u>See generally</u> Complaint. Indeed, Bote does not identify any features of iRocker's chair that iRocker could not have developed by simply reading what Bote disclosed in its patents. <u>See generally</u> <u>id.</u> In sum, even taken together, Bote's allegations do no more than suggest the <u>possibility</u> of trade secret misappropriation. "The mere possibility of misconduct" is not enough to state a claim. <u>Iqbal</u>, 556 U.S. at 679. Thus, Bote fails to state a claim for misappropriation of trade secrets as needed to establish that section 48.193(1)(a)(2) permits the exercise of personal jurisdiction over May.[14]

## IV.    Conclusion

The Court lacks personal jurisdiction over May under the Florida long-arm statute. As such, the Motion is due to be granted in part. The claims against May are due to be dismissed without prejudice. As to May's alternative request to compel arbitration, the Motion is due to be denied without prejudice as moot.

Accordingly, it is

---

[14] Just as Bote fails to explain any connection between May's business activities in Florida and Bote's trade secrets claims, <u>see</u> <u>supra</u> at 21 n.10, Bote also fails to explain a nexus between May's purported misappropriation of trade secrets and its claim for breach of contract, <u>see generally</u> Response. Notably, Bote does not bring a claim for breach of contractual provisions prohibiting the disclosure of trade secrets. <u>See generally</u> Complaint. Instead, Bote's contract claim arises from a noncompete provision. <u>See</u> <u>id.</u> ¶¶ 48–59. Thus, even if the Court were to conclude that Bote's allegations state a claim for trade secret misappropriation so as to bring May within subsection (1)(a)(2) of the long-arm statute, the Court would still lack personal jurisdiction under that subsection as to the breach of contract claim.

**ORDERED:**

1.    Defendant Aaron May's Motion to Dismiss for Lack of Personal Jurisdiction or, Alternatively, to Compel Arbitration (Doc. 46) is **GRANTED IN PART**.

2.    The claims Plaintiff, Bote, LLC, brings against May are **DISMISSED WITHOUT PREJUDICE**.

3.    In all other respects, May's Motion is **DENIED WITHOUT PREJUDICE**.

4.    The Clerk of the Court is directed to **terminate** Aaron May as a defendant in this action.

    **DONE AND ORDERED** in Jacksonville, Florida this 13th day of March, 2026.

**MARCIA MORALES HOWARD**
United States District Judge

lc33

Copies to:
Counsel of Record